# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

JOSE AUGUSTO NUNES JR., an
Individual, and KHAALID ALI, an
Individual, on behalf themselves and
all others similarly situated,

     Plaintiffs,

v.              CASE NO.:

WELLS FARGO BANK, N.A.,
CLIFTONLARSONALLEN LLP,
JAMES R. LAVIGNE, and AMERICAN
LAWYERS INTERNATIONAL, PLLC,

     Defendants.

_____/

## NOTICE OF REMOVAL

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") by counsel and pursuant

to 28 U.S.C. §§ 1332, 1441, 1446(a), 1453, and 12 U.S.C. § 632, hereby removes

the above-captioned civil action currently pending in the Circuit Court of the Ninth

Judicial Circuit in and for Orange County, Florida to the United States District Court

for the Middle District of Florida, Orlando Division.  In support of this Notice of

Removal, Defendant states:

## I.  BACKGROUND AND PROCEDURAL POSTURE

1.  On December 29, 2025, Plaintiffs Jose August Nunes Jr. and Khaalid

Ali ("Plaintiffs") filed a putative class action complaint (the "Complaint") against

Wells Fargo, CliftonLarsonAllen LLP, James R. Lavigne, and American Lawyers International, PLLC (together, "Defendants"), in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, styled *Jose Augusto Nunes Jr., an Individual, and Khaalid Ali, an Individual, on behalf of themselves and all others similarly situated, v. Wells Fargo Bank, N.A., CliftonLarsonAllen LLP, James R. Lavigne; American Lawyers International, PLLC*, No. 2025-CA-012835-O (the "State Court Action"). Plaintiffs allege that Defendants facilitated a fraudulent EB-5 investment scheme connected to a planned commercial development in central Florida called "City Center West Orange" (hereinafter, "CCWO"), by "creat[ing] the false appearance of a functioning EB 5 development," "provid[ing] the instrumental banking infrastructure to receive and move investor capital," and "disseminat[ing] false project status communications." *See* Compl. ¶¶ 1; 9.

2.      Plaintiffs claim that they lost substantial funds after they were induced to invest in the scheme by its alleged organizer, David Towsend, who purportedly worked in concert with Defendants to effectuate the scheme.

3.      Plaintiffs allege that Wells Fargo aided and abetted the fraudulent scheme by maintaining bank accounts used by the CCWO project. *See id.* ¶ 7.

4.      After initially reaching out to counsel for Plaintiffs on January 14, 2026 regarding waiver of service, on February 6, 2026, Wells Fargo accepted service of

the state court Summons and Complaint, which is the initial pleading setting forth the claims for relief upon which this removal is based.

5.    Based on the state court docket, Defendant CliftonLarsonAllen LLP was served on January 30, 2026, and Defendants James R. Lavigne and American Lawyers International, PLLC were served on February 2, 2026.

6.    Removal of this Complaint is timely under 28 U.S.C. § 1446(b) because this Notice of Removal was filed within thirty days after Wells Fargo's receipt of the Complaint, through service or otherwise.

7.    The United States District Court for the Middle District of Florida, Orlando Division, is the district and division within which this action is pending under 28 U.S.C. §§ 1441(a), 1446(a), and is therefore the proper venue for this action. *See also* M.D. Fla. Local Rules 1.04(a) & 1.06(a).

8.    In accordance with 28 U.S.C. § 1446(a) and M.D. Fla. Local Rule 1.06(b), "all process, pleadings, and orders" that have been docketed in the State Court Action have been attached to this Notice of Removal.

9.    Pursuant to 28 U.S.C. § 1446(d), Wells Fargo has given written notice of this Notice of Removal to all adverse parties.    Wells Fargo is also contemporaneously filing a copy of this Notice of Removal in the State Court Action, attached to this Notice of Removal.

10.     As set forth below, this case is properly removed to this Court because this Court has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332, 1453, and jurisdiction under the Edge Act, 12 U.S.C. § 632.

## II.    JURISDICTION UNDER CAFA

11.     Jurisdiction is proper under CAFA.  CAFA provides that federal district courts "shall have original jurisdiction" over class action lawsuits when (1) "any member of a class of plaintiffs is a citizen of a State different from any defendant," (2) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and (3) the members of the putative class number at least 100. *See* 28 U.S.C. § 1332(d)(2), (5).

12.     CAFA was enacted by Congress "to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).  As a result, "no antiremoval presumption attends cases invoking CAFA." *Id.*  Moreover, CAFA does not require the consent of other Defendants for removal.  *See* 28 U.S.C. § 1453(b); *Hill v. Nat'l Ins. Underwriters, Inc.*, 641 F. App'x 899, 904 n.1 (11th Cir. 2016) ("[Section] 1453 governs actions removed under CAFA and, as noted above, § 1453(b) states that unanimous consent is not required in the removal of a class action.").

13.     As set forth below, this Court has subject matter jurisdiction over this action under CAFA because: (1) the citizenship of at least one putative class member

is different from that of Wells Fargo, § 1332(d)(2)(B); (ii) the aggregate amount placed in controversy by the claims of Plaintiffs and the putative class members exceeds $5,000,000, exclusive of interest and costs, § 1332(d)(2); and (iii) the putative class consists of at least 100 proposed class members, § 1332(d)(5)(B). *See S. Fla. Wellness v. Allstate Ins. Co.,* 745 F.3d 1312, 1315 (11th Cir. 2014).

**A.    The citizenship of at least one putative class member is different from that of Wells Fargo.**

14.    Minimal diversity of citizenship, as required by CAFA, exists between Wells Fargo and the named Plaintiffs and/or the putative class members, as set forth below.  *See* 28 U.S.C. § 1332(d)(2)(B).

15.    Plaintiff Nunes is a citizen of Brazil who resides in Florida, Compl. ¶ 14, and Plaintiff Ali is a citizen of Trinidad and Tobago who also resides in Florida, Compl. ¶ 18.

16.    Wells Fargo is a national banking association organized under the laws of the United States with its principal office located in Sioux Falls, South Dakota. *See* Office of the Comptroller of the Currency List of National Banks Active as of January 31, 2026, available at https://www.occ.treas.gov/topics/charters-and-licensing/financial-institution-lists/national-by-name.pdf.  "[A] national bank . . . is a citizen of the State in which its main office, as set forth in its articles of association, is located." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006).  Consequently, Wells Fargo is a citizen of South Dakota.  Because Plaintiffs (foreign citizens who

reside in Florida) are diverse from Wells Fargo (a South Dakota citizen), the required minimal diversity exists under § 1332(d)(2)(B).  Regardless of whether Plaintiffs are citizens of Florida or of foreign countries for diversity purposes, the required minimal diversity under CAFA is still established, as at least one Defendant (Wells Fargo) is a citizen of a different state.  *See* 28 U.S.C. § 1332(d)(2)(A).

**B.    The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.**

17.    Under CAFA, the claims of the individual class members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(6).

18.    The amount in controversy "is an estimate of how much will be put at issue during the litigation," rather than "a prediction of how much the plaintiffs are ultimately likely to recover."  *S. Fla. Wellness,* 745 F.3d at 1315 (quotation marks omitted).  A "defendant's notice of removal need include only a *plausible allegation* that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin*, 574 U.S. at 89 (emphasis added).

19.    Plaintiffs assert that the minimum EB-5 investment in CCWO was $500,000, and that at least 88 EB-5 investors were involved.  Compl. ¶¶ 39; 72.  Notably, Plaintiffs do not allege there are under 100 EB-5 investors involved, and note that it is *at least* 88.

20.    As a result, Plaintiffs estimate that the controversy "likely exceeds $50,000,000.00." *Id.* ¶ 10. This comports with Plaintiffs' allegations that there were at least 88 investors, and that the minimum investment was $500,000. *See id.* ¶¶ 39; 72. Accordingly, there is a minimum of $44,000,000 at issue by Plaintiffs' own estimates.

21.    Additionally, Plaintiffs claim that they and the putative class members are entitled to punitive damages, which can be included in calculating the amount in controversy. *See id.* ¶ 233(1)-(4); *McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 731 (11th Cir. 2014).

22.    Wells Fargo does not concede in any way that Plaintiffs' claims are valid in any respect and states solely for the purposes of estimating the amount in controversy under Plaintiffs' theory of the case that the amount in controversy well exceeds $5,000,000 if Plaintiffs' allegations are taken as true.

**C.    The putative class consists of at least 100 proposed class members.**

23.    Plaintiffs purport to bring this action on behalf of "[a]ll non-U.S. citizens who invested in and became members of City Center West Orange, LLC in connection with the EB-5 offering" at issue. Compl. ¶ 162.

24.    Plaintiffs allege that there are "at least" 88 "geographically dispersed individuals" who were EB-5 investors in CCWO and who make up part of the member class. *See id.* ¶¶ 72; 162; 165. Again, they seem to acknowledge that there

are likely more than 88 individuals. As set forth below, it is apparent there are over 100 putative class members.

25.    In addition to these "at least" 88 members of the putative class, named Plaintiff Khaalid Ali previously moved to intervene in a pending Florida state court foreclosure action on behalf of a class of "90+" EB-5 investors in the alleged CCWO scheme. *See* Motion to Intervene as a Class Action, *Reef Private Credit LLC v. CBPW Corp., et al*., No. 2023-CA-016643-O (Fla. 9th Cir. Ct., filed Feb. 29, 2024) (alleging that "90+" EB-5 investors, plus the three named interveners, were defrauded by the CCWO scheme). The motion to intervene was denied. Consequently, it is reasonable for Wells Fargo to utilize the 90+ number filed in a pleading as a basis to count to 100 class members. *See Pretka v. Kolter City Plaza II, Inc*., 608 F.3d 744, 754 (11th Cir. 2010) (Jurisdiction under CAFA is proper "when a removing defendant makes specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations.").

26.    Wells Fargo has identified at least three non-U.S. citizens who have brought individual lawsuits against CCWO as EB-5 investors. *See Leung v. City Center West Orange, LLC, et al*., No. 2023-CA-014293-O (Fla. 9th Cir. Ct.); *Bernardo v. City Center West Orange, LLC, et al*., No. 2022-CA-000446-O (Fla. 9th

Cir. Ct.); *Moutinho v. City Center West Orange, LLC, et al*., No. 2020-CA-000762-O (Fla. 9th Cir. Ct.).  These three non-U.S. Citizens fall within the class as defined.

27.    Wells Fargo has also identified other lawsuits against CCWO-related entities that may involve members of this putative class action.  *See, e.g.*, *Yan Ding et al. v. Lake Bennett Village Ocoee LLC, et al.*, No. 2020-CA-006517-O (Fla. 9th Cir. Ct.); *Nelson v. City Center West Orange LLC, et al.*, No. 2023-CA-015608-O (Fla. 9th Cir. Ct.). These may involve other putative class members because the allegations related to those cases reasonably involve the class as defined in this case.

28.    Wells Fargo is also aware of at least four bankruptcy proceedings associated with CCWO, which involve 9, 11, 12, and 15 creditors, respectively, and which appear to involve secured interests and/or foreclosure judgments on parcels of land connected to the planned CCWO site.  *See In re Lake Bennett Village – Ocoee, LLC*, No. 6:25-bk-02001-GER (Bankr. M.D. Fla.); *In re Maine Boulevard II, LLC*, No. 6:25-bk-02002-GER (Bankr. M.D. Fla.); *In re T14-15, LLC*, No. 6:25-bk-03231-GER (Bankr. M.D. Fla.); *In re T14-15, LLC*, No. 6:24-bk-4490-GER (Bankr. M.D. Fla.).  The creditor lists for these proceedings include an individual (Juan Capote), as well as multiple LLCs and an LP.  It is reasonable to conclude that these investors and entities are or contain members of the putative class at issue.

29.    Given Plaintiffs' assertions that the class size is over 88, Compl. ¶ 72, and named Plaintiffs Ali's prior representation in *Reef Private Credit* that "90+" EB-

5 investors were harmed by the alleged CCWO scheme at issue, *supra,* ¶ 25, combined with the numerous other related lawsuits, bankruptcy proceedings (which have various business entities listed as creditors, which themselves likely carry a multitude of interests), and other related claims, Wells Fargo has sufficiently established that the putative class consists of at least 100 class members. *See Pretka*, 608 F.3d at 754 (noting that under CAFA, a defendant's removal allegations may rely in-part on "reasonable deductions, reasonable inferences, or other reasonable extrapolations"). Based on the foregoing litigations, proceedings, and Plaintiffs' own assertions, there is a reasonable (and strong) basis to conclude that CAFA's putative class size requirement has been satisfied.

30.    In sum, (i) there is minimal diversity between the parties, (ii) the amount in controversy exceeds $5,000,000, and (iii) the putative class has greater than 100 members. This case is properly removed to this Court pursuant to CAFA, 28 U.S.C. §§ 1332(d), 1453.

## III.    EDGE ACT JURISDICTION

31.    Jurisdiction is also proper under the Edge Act, 12 U.S.C. § 632, which permits removal of "all suits of a civil nature at common law or in equity," where one party is "any corporation organized under the laws of the United States," and the dispute arises out of "transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other

international or foreign financial operations." *See* 12 U.S.C. § 632. Courts have interpreted this provision to confer jurisdiction if: (i) the action is civil; (ii) one of the parties is a federally chartered corporation, such as a federally chartered bank; and (iii) the action arises out of international banking or international financial operations. *See Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 779-80 (2d Cir. 2013); *Warter v. Bos. Sec., S.A.*, No. 03-81026-CIV/RYSKAMP, 2004 WL 691787, at *5 (S.D. Fla. Mar. 22, 2004).

32.    The Edge Act does not require consent from other Defendants for removal. *See CI Int'l Fuels, Ltda. v. Helm Bank, S.A.*, 707 F. Supp. 2d 1351, 1354 (S.D. Fla. 2010) (explaining that the "unanimity," or obtaining consent to remove from all defendants, is not required for removal under § 632).

33.    Plaintiffs have brought a civil action against Defendants and expressly characterize it as such. *See* Compl. ¶ 10 ("This is a *civil controversy* that likely exceeds $50,000,000.00, exclusive of attorney fees, costs and interest.") (emphasis added).

34.    Wells Fargo is a national bank chartered pursuant to the National Bank Act, which qualifies it as a federally chartered corporation for purposes of § 632.

35.    In considering whether the action arises out of international banking or international financial operations, courts examine whether the action stems from "traditional banking activity with a foreign aspect." *Bancor Grp. Inc. v. Rodriguez*,

No. 22-20201-CV, 2022 WL 18542007, at *2 (S.D. Fla. Dec. 21, 2022), *report and recommendation adopted*, No. 22-CV-20201, 2023 WL 2770703 (S.D. Fla. Apr. 4, 2023) (citing *Vara v. Inocenti*, No. 18-23058, 2018 WL 8415251, at *1 (S.D. Fla. Nov. 16, 2018)).[1]

36.     Here, foreign investors who are part of the purported class sent money from their international bank accounts to accounts maintained at Wells Fargo by CCWO and the wrongdoers, allegedly as part of the EB-5 scheme.  Indeed, two of the Wells Fargo accounts associated with CCWO reflect that there were over 150 deposits from foreign banks, which totaled over $15 million U.S. Dollars.

37.     Not only is the foreign aspect "central" to the present action, it was an *indispensable* part of the allegedly fraudulent EB-5 investment program, which was premised on encouraging the investment of international capital in exchange for lawful U.S. residency.  This exceeds the "foreign aspects" present in other successful Edge Act removals.  *See, e.g., Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank*

---

[1] While some courts have held that the foreign banking aspect must also be "central" to the parties' dispute, *Bancor*, 2022 WL 1854200, at *2, many others have read § 632 more broadly.  *See, e.g.*, *Pinto v. Bank One Corp.*, No. 02 CIV.8477 NRB, 2003 WL 21297300, at *3 (S.D.N.Y. June 4, 2003) (explaining that "[a] suit satisfies the jurisdictional requisites of Section 632 if any part of it arises out of transactions involving international or foreign banking.");  *Luby's Fuddruckers Restaurants, LLC v. Visa Inc.*, 342 F. Supp. 3d 306, 318 (E.D.N.Y. 2018) ("[T]he Edge Act does not require the foreign transaction to be central to the claim.");  *City of Stockton v. Bank of Am., N.A.*, No. C-08-4060 MMC, 2008 WL 5063877, at *2 (N.D. Cal. Nov. 21, 2008) ("[A] suit satisfies the jurisdictional requisites of [the Edge Act] if *any part* of it arises out of transactions involving international or foreign banking.") (emphasis added; internal quotation marks and citations omitted).  This district does not appear to have directly confronted this issue.  Nevertheless, the foreign banking aspect in this case is "central" to the dispute and therefore meets either standard.

*N.A.*, No. 14 Civ. 1936 (ER), 2015 WL 1433320, at *4 (S.D.N.Y. Mar. 30, 2015) (noting that a bank's receipt and transfer of "funds advanced by Cayman-based plaintiffs" was "sufficient to establish Edge Act jurisdiction," even though "there were never any wires in or out of the United States."); *Highland Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc.*, 627 F. Supp. 2d 730, 733 (N.D. Tex. 2008) (explaining that § 632 was satisfied because "the presence of a Bermudan partnership as a lender makes this an international transaction.").

38.    As discussed above, foreign investment sits at the very foundation of this case, as the alleged scheme was supposedly reliant on consistent, large infusions of cash from non-U.S. citizens, including Plaintiffs.  Indeed, the class definition itself *requires* putative members to be "non-U.S. citizens."  Consequently, there is a strong international nexus, and jurisdiction is proper under the Edge Act, 12 U.S.C § 632.

## IV.    RESERVATION OF RIGHTS

39.    In filing this Notice of Removal, Wells Fargo does not waive and expressly reserves any defenses, exceptions, rights, and motions.  *See, e.g.*, *Kostelac v. Allianz Glob. Corp. & Specialty AG*, 517 F. App'x 670, 675 n.6 (11th Cir. 2013) ("The removal of an action from state to federal court does not waive any Rule 12(b) defenses").  No statement or omission in this Notice of Removal shall be deemed an admission of any of allegations of or damages sought in the Complaint.  Similarly,

by filing this Notice of Removal, Wells Fargo does not agree class certification is appropriate and reserves all defenses and arguments concerning same.

40.     Wells Fargo further reserves the right to supplement the evidence of the amount in controversary should this Court so require or should Plaintiffs contest it. *See Dart Cherokee Basin*, 574 U.S. at 89 ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.").

## V.    CONCLUSION

Defendant Wells Fargo Bank, N.A. respectfully requests that the above-captioned action now pending in the Ninth Judicial Circuit in and for Orange County, Florida, be removed to the United States District Court for the Middle District of Florida, Orlando Division, and that said Court assume exclusive jurisdiction of this action and enter such other and further relief as may be necessary.

DATED: February 13, 2026

**McGUIREWOODS LLP**

*/s/ Emily Y. Rottmann*
Emily Y. Rottmann
Florida Bar No. 93154
erottmann@mcguirewoods.com
flservice@mcguirewoods.com
50 N. Laura Street, Suite 3300
Jacksonville, Florida 32202
Tel: (904) 798-3200
Fax: (904) 798-3207

*Lead Counsel for Defendant Wells Fargo Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY a copy of the foregoing was furnished by E-mail or U.S. Mail, on February 13, 2026, to the following:

### *<u>Via E-Mail</u>*

Gail A. McQuilkin, Esq.
Benjamin Widlanski, Esq.
Kozyak Tropin & Throckmorton LLP
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL  33134
gam@kttlaw.com
bwidlandki@kttlaw.com

Kenneth J. McKenna, Esq.
Anthony F. Sos, Esq.
Dellecker, Wilson, King, McKenna, Ruffier & Sos LLP
719 Vassar Street
Orlando, FL  32804-4920
kjmeservice@dwklaw.com
afservice@dwklaw.com

*Counsel for Plaintiffs*

Jonathan Vine, Esq.
Sheena Maldanodo, Esq.
Jonathan Fernandez, Esq.
Cole, Scott & Kissane, P.A.
222 Lakeview Avenue, Suite 500
West Palm Beach, FL 33401
jonathan.vine@csklegal.com
sheena.maldonado@csklegal.com
jonathan.fernandez@csklegal.com
leslie.vargo@csklegal.com
fabiola.castro@csklegal.com

*Counsel for CliftonLarsonAllen LLP*

***<u>Via E-Mail and U.S. Mail</u>***

James R. Lavigne
American Lawyers International, PLLC
6909 Old Hwy 441, Suite 109
Mt. Dora, FL  32757
jlavigne@alawinternational.com

*/s/ Emily Y. Rottmann*
Attorney